IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EDWARD D. ELIASON, and
RACHELLE D. ELIASON,

                Plaintiffs,                OPINION AND ORDER

    v.                                            19-cv-829-wmc

SUPERIOR REFINING
COMPANY LLC,

                Defendant.

---

        This action is one of a series that arose out of an explosion at the Husky Superior Refinery ("the Refinery") in April of 2018.[1] Here, plaintiff Edward Eliason alleges that he was physically injured due to the blast caused by the explosion, while his wife Rachelle alleges loss of consortium based on his injuries. As in most of the other cases, defendant Superior Refining Company LLC once again moves to dismiss plaintiffs' complaint. (Dkt. #27.) For reasons previously explained and set forth below, the court will again deny defendant's motion.[2]

---

[1] *See Bruzek v. Husky Energy, Inc.*, 18-cv-697-wmc; *Mayr v. Husky Energy, Inc.*, 18-cv-917-wmc; *Fagan v. Superior Refining Co. LLC*, ("Fagan I"), 19-cv-462-wmc; *Fagan v. Superior Refining Co. LLC*, ("Fagan II"), 20-cv-685-wmc; *Moore v. Husky Energy, Inc.*, 20-cv-632-wmc; *Bell-Yellin et al. v. Superior Refining Co. LLC*, 20-cv-631-wmc; *Wysocki v. Superior Refining Co. LLC*, 21-cv-6-wmc.

[2] Indeed, plaintiffs here allege largely the same facts regarding the events surrounding the explosion at the Refinery as those alleged by the plaintiff in *Mayr v. Husky Energy, Inc.*, 18-cv-917-wmc.

ALLEGATIONS OF FACT[3]

In early 2018, defendant scheduled a "shut down" of the Husky Superior Refinery in Superior, Wisconsin, for maintenance and installation of equipment. (Am. Compl. (dkt. #23) ¶ 20.) On April 26, 2018, an explosion occurred at the Refinery, causing a strong blast wave. (*Id.* ¶¶ 21-23.) On the date of the explosion, Mr. Eliason was working outside on the property of the adjacent Enbridge Energy facility. (*Id.* ¶ 23.) He was knocked off of his feet to the ground by the blast wave from the explosion, resulting in a "traumatic brain injury, permanent partial vision loss, permanent partial hearing loss, life changing harm and other injuries and damages, including past and future medical and health care expenses, past and future medical monitoring costs, past and future loss of earning capacity, pain, suffering, disability, disfigurement and severe emotional distress." (*Id.* ¶ 67.) As a result of these injuries, Mr. Eliason's wife also alleges a "loss of consortium including, but not limited to, the loss of companionship and society, comfort, aid, advice and solace, material services, support and other elements that normally arise in a close, intimate and harmonious marriage relationship." (*Id.* ¶ 72.)

Plaintiffs allege that the explosion itself was caused by defendant's continued use of a worn valve that malfunctioned, allowing oxygen and hydrocarbon to mix within the Refinery and become flammable. (*Id.* ¶¶ 25-43.) This mixture then allegedly grew and ignited, causing the explosion. (*Id.* ¶ 43.) Eventually, defendant publicly acknowledged

---

[3] In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

that its own internal investigation was largely consistent with the finding of the Chemical Safety and Hazard Investigation Board (the "CSB"), a federal agency that investigates accidental releases of chemicals, began investigating the explosion. that the explosion was caused by a failed slide valve. (*Id.* ¶¶ 6-9.)

OPINION

A motion to dismiss for failure to state a claim is designed to test the complaint's legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). Dismissal is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). To survive a motion to dismiss, a plaintiff must allege sufficient facts to state a plausible claim for relief. *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Twombly*, 550 U.S. at 570). "[W]hen it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

As already noted, this court has previously ruled on motions to dismiss in other, similar cases arising out of the 2018 Refinery explosion. *See Mayr*, 18-cv-917-wmc (dkt. #45) (denying motion to dismiss); *Bruzek*, 18-cv-697-wmc (dkt. #78) (denying motion to dismiss); *Fagan I*, 19-cv-462-wmc (dkt. #34) (granting motion to dismiss). Notably, except

3

for the allegations relating to the specific circumstances surrounding plaintiffs' injuries, the facts alleged in the present complaint are materially the same to those alleged in *Mayr,* a fact which defendant nevertheless largely ignores. (*Compare* Am. Compl. (dkt. #23) ¶¶ 8-10, 19-43; *with Mayr,* 18-cv-917-wmc, Am. Compl. (dkt. #4) ¶¶ 3.1-3.2, 3.5-6.3.)[4] Thus, as discussed below, and for many of the reasons previously set forth in *Mayr,* the court concludes that plaintiffs here have stated a claim on which relief may be granted, and defendant's motion to dismiss will be denied.

I. Negligence

Under Wisconsin law, a negligence claim involves four elements: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the [breach]." *Hoida, Inc. v. M & I Midstate Bank,* 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 302, 717 N.W.2d 17, 27 (quoting *Gritzner v. Michael R.,* 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 790, 611 N.W.2d 906, 912). A defendant owes plaintiff a duty of ordinary care to act as a reasonable person would in similar circumstances. *See Gritzner,* 2000 WI 68, ¶ 22. Thus, "[i]f a person, without intending to do harm, acts, or fails to do an act, that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property, he or she is not exercising ordinary care under the circumstances." *Hoida, Inc.,* 2006 WI 69, ¶ 23. As for causation,

---

[4] The *Mayr* plaintiff also had to overcome the general rule of principal employer nonliability as the plaintiff in that case was the employee of an independent contractor hired by defendant. *See Mayr,* 18-cv-917, at *3-4. This defense is not available to defendant here.

a plaintiff must prove "that the defendant's negligence was a substantial factor in causing the plaintiff's harm." *Ehlinger by Ehlinger v. Sipes*, 155 Wis. 2d 1, 12, 454 N.W.2d 754 (1990).

In their motion to dismiss, defendant argues that plaintiffs have failed to sufficiently allege a breach of duty and causation. (Def.'s Br. (dkt. #13) 4-6.) In *Mayr*, however, the court addressed nearly identical arguments, holding that:

> At least as pleaded, the use of a defective valve, despite its worn nature and the foreseeable consequences of that wear given the potentially dangerous gases involved, could have fallen outside what a reasonable person would have done if operating the Refinery, or at least a reasonable trier of fact might so infer. Taken as true, therefore, plaintiff's allegations constitute a plausible breach of duty by defendant in the continued use of the deficient valve.
>
> Plaintiff has also plausibly alleged causation because, according to the complaint, the use of the valve was a substantial factor in creating the flammable mixture that caused both the explosion and plaintiff's resulting injuries.

*Mayr*, 18-cv-917 at *5-6. These same conclusions apply with equal force with regard to plaintiffs' pleading here. Accordingly, plaintiffs have established their claim of negligence against defendant.

## II. Extrahazardous Activity

Wisconsin law also imposes strict liability on those engaging in "extrahazardous" or "abnormally dangerous" activities when doing so results in harm to another.[5] *Fortier v.*

---

[5] "The terms 'extrahazardous' and 'abnormally dangerous' are used synonymously in Wisconsin." *Estate of Thompson v. Jump River Elec. Co-op.*, 225 Wis. 2d 588, 595 n.5, 593 N.W.2d 901 (Ct. App. 1999).

5

*Flambeau Plastics Co.*, 164 Wis. 2d 639, 667-68, 476 N.W.2d 593 (Ct. App. 1991). For purposes of strict liability, whether an activity qualifies as extrahazardous is determined by considering a number of factors set forth in the Restatement (Second) of Torts, "including the degree of risk, the likelihood of harm, the ability to eliminate the risk with the exercise of reasonable care, and the value of the activity to the community, among other factors." *Liebhart v. SPX Corp.*, No. 16-cv-700-jdp, 2017 WL 5054730, at *4-*5 (W.D. Wis. Nov 2, 2017) (citing *Fortier*, 164 Wis. 2d at 667-68).

While this determination is to be made by the court as a matter of law, the court must do so "in light of the facts presented to the court." *Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1176 (7th Cir. 1990) (citing Restatement (Second) Torts § 520, cmt. *l* (Am. Law Inst. 1977)). Thus, this court has previously deferred determining whether an activity qualifies as extrahazardous until after discovery. *See Liebhart*, 2017 WL 5054730, at *5 ("Defendants may be correct that that the activity at issue in this case is not abnormally dangerous under Wisconsin law, but that issue should be decided in the context of a developed record rather than on a motion to dismiss, so the court will deny SPX's motion as to this claim.").

Defendant argues that plaintiffs have failed to state a claim of strict liability for extrahazardous activity. (Def.'s Br. (dkt. #13) 8-10.) As this court noted in *Fagan I*, other courts outside of Wisconsin have concluded that various activities related to the operation of oil refineries are not extrahazardous. *See Fagan I*, 19-cv-462 at *9 (citing *Flanagan v. Ethyl Corp.*, 390 F.2d 30 (3d Cir. 1968) (the work of filling an oil tank at a refinery when an explosion occurred, killing the worker, was a matter of common usage and not

ultrahazardous); *Hall v. Amoco Oil Co.*, 617 F. Supp. 111, 112 (S.D. Tex. 1984) ("the Court concludes that the operation of an oil refinery in an industrial community . . . does not constitute an ultrahazardous activity"); *Roach v. Air Liquide America, LP*, Case No. 2:12-3165, 2013 WL 3148627 (W.D. La. 2013) (painting and sandblasting tanks at a refinery was not an ultrahazardous activity)).

Still, no court applying Wisconsin law has formally declared as a matter of law that oil refinery operations are *not* extrahazardous. On the contrary, in *Mayr*, this court held that plaintiff had stated a claim sufficient to survive a motion to dismiss based on similar allegations of extrahazardous activity:

> At present, the court is distinctly ill-informed to engage in this inquiry, much less undertake to balance the relevant factors to determine if operating a refinery like that at issue here constitutes an extrahazardous activity under Wisconsin law. While operating a refinery containing combustible chemicals may very well *not* merit strict liability under Wisconsin law, the court cannot say for certain without a developed evidentiary record. . . . Moreover, defendants have cited no case law holding that the operation of a refinery is *not* extrahazardous as a matter of law. Finally, whether defendants' activities qualify as extrahazardous will certainly be better answered within the context of a developed evidentiary record following discovery.

*Mayr,* 18-cv-917 at *7 (internal citations omitted, emphasis in original). The relevant allegations from *Mayr* were largely repeated in the present plaintiffs' complaint, and the court sees no reason to depart from its previous reasoning here.

### III. Punitive Damages

Defendant next argues that plaintiffs have failed to support their request for punitive damages. (Def.'s Br. (dkt. #28) 8.) A plaintiff may receive punitive damages if

the evidence shows that defendants acted maliciously towards them or in an intentional disregard of their rights. Wis. Stat. § 895.043(3). In other words, punitive damages may be awarded if a jury determines that defendants' conduct was "either malicious[] or in wanton, willful, or reckless disregard of plaintiff[s'] rights." Wis. JI-CIVIL 1707. A defendant's conduct "is wanton, willful, or in reckless disregard for plaintiff's rights when it demonstrates an indifference on his or her part to the consequences of his or her actions." *Id.*

Although the court did not address the availability of punitive damages in *Mayr*, it did in *Bruzek*, concluding:

> Plaintiffs allege that defendants were "aware of . . . conditions at the Husky Superior Refinery which created a high probability of injury to the rights and safety of Plaintiffs . . ." and that defendants "intentionally proceeded to act in conscious and intentional disregard of that high probability of injury." Taken with allegations of a worn valve and the presence of a dangerous chemical compound, it is conceivable or at least not unreasonable on its face, to suppose that a jury might award plaintiffs punitive damages, although admittedly this is a much closer question on the limited facts before the court at the pleadings stage. Regardless, the question of punitive damages will be much better addressed upon a developed evidentiary record, and the court will not preclude plaintiffs from developing that record at its outset.

*Bruzek*, 18-cv-697, at *14. Here, as in *Bruzek*, plaintiffs have alleged that defendant "is guilty of a reckless indifference to, and disregard of, the rights of the plaintiffs and many others." (Am. Compl. (dkt. #23) ¶ 70.) Thus, and for the same reasons articulated in

*Bruzek*, the court will not dismiss plaintiffs' request for punitive damages.[6]

### IV. Loss of Consortium

Finally, defendant argues that plaintiffs' loss of consortium claim must be dismissed. (Def.'s Br. (dkt. #28) 8-9.) Wisconsin has long recognized the right of spouses to bring a claim for loss of consortium when their spouse is injured by the acts of a third party. *Kottka vs. PPG Industries, Inc.,* 130 Wis. 2d 499, 516, 388 N.W.2d 160 (1986). A spouse's claim for loss of consortium is derivative of the other spouse's personal injury claim. *Id.* at 521. Defendant contends that because Mr. Eliason's personal injury claims fail, Mrs. Eliason's loss of consortium claim must fail. (Def.'s Br. (dkt. #28) 8-9.) However, the court has now upheld plaintiffs' negligence, strict liability, and punitive damages claims. Thus, the court will allow plaintiffs to proceed on her claim for loss of consortium as well.

### ORDER

IT IS ORDERED that:

1) Defendant's motion to dismiss (dkt. #27) is DENIED.

---

[6] Further, punitive damages in Wisconsin are a remedy, not a freestanding cause of action. *See Becker v. Automatic Garage Door Co.*, 156 Wis. 2d 409, 415, 456 N.W.2d 888, 890 (Ct. App. 1990) ("A claim for punitive damages is in the nature of a remedy and should not be confused with the concept of a cause of action") (citing *Brown v. Maxey*, 124 Wis. 2d 426, 431, 369 N.W.2d 677, 680 (1985)). As a result, this court has previously found it premature to determine the issue of punitive damages at the pleading stage. *Hamilton v. 3D Idapro Sols., LLC*, No. 18-CV-54-JDP, 2018 WL 5342695, at *5 (W.D. Wis. Oct. 29, 2018) it is an "an open question in this circuit whether a party even needs to plead punitive damages in her complaint") (citing *Soltys v. Costello*, 520 F.3d 737, 742 (7th Cir. 2008)). These same concerns cut against dismissal of plaintiffs' punitive damages request at this stage.

2) The court will issue an order shortly setting a hearing in the next few weeks regarding the possible consolidation of this action with other similar pending cases; accordingly, today's scheduling conference with Magistrate Judge Crocker is CANCELED.

Entered this 31st day of March, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge