IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EDWARD D. ELIASON, *et al.*

                        Plaintiff,

v.

SUPERIOR REFINING COMPANY, LLC,

                        Defendant.

ORDER

19-cv-829-wmc

SRC has moved to bar Eliason from interfering with a subpoena SRC served on Superior Savings Bank, or alternatively to order the bank to comply with the subpoena. Dkt. 282. Superior wants the bank to disclose all financial records in its possession of Eliason and his wholly-owned company, Service Electric, Inc. (SEI). Eliason opposes the motion as seeking irrelevant, confidential information (dkt. 296) and he has submitted the requested records ex parte to the court for in camera review (dkt. 313). As discussed below, I am ordering disclosure of these records for review by SRC's trial attorneys and its damages expert witness(es).

According to SRC, Eliason is claiming as damages millions of dollars in past and future lost income, loss to the value of SEI and millions of dollars in new costs for services such as bookkeeping, a handyman, snow removal, housekeeping, and chore work. Mem. in Support, dkt. 283, at 2. Apparently Eliason has disclosed two expert witnesses to support his claims; Superior is skeptical of the experts' opinions and asserts that it is entitled to review Eliason's financial records to determine the validity of his claimed damages. *Id.* at 3.

Citing to a 1993 unpublished opinion from the Eastern District of Wisconsin,[1] Eliason asserts that "a plaintiff's personal wealth information is irrelevant in a civil claim where the issues are liability and damages." Plaintiff's Opp., dkt. 296, at 1. While the broad language employed by Judge Warren in *Pinto* perhaps could be stretched to justify a "*cf.*" citation here, this is not what the court was addressing and it is not what the court held. In *Pinto*, an FELA case,

---

[1] *Pinto v. Wis. Central, Ltd.*, 1993 U.S. Dist. LEXIS 21975 at * 11 (E.D. Wis. 1993)

the court was deciding–and granting–the defendant railroad's motion to prevent plaintiff from mentioning its size or wealth.  Citing to circuit law, the court held that the relative wealth of the railroad–in implicit contrast to the relative poverty of the plaintiff–was not relevant to the issues of liability or damages.  *Id.*

More helpful to Eliason is *O'Malley v. Public Belt Railroad Comm.,* 2018 WL 733227 (E.D. La. 2018), an FELA case brought by a switchman hit and injured by a locomotive.  Among other things, plaintiff claimed lost past and future wages, benefits and earning capacity, plus compensation for loss of life's pleasures from his permanent injuries. Defendant sought all of plaintiff's financial information, including all bank, credit and debit card statements. The court said no, stated simply that "the possibility that [plaintiff's] financial activity would shed light into his post-accident activity is tangential at best."  Weighing this assessment against the high burden of production and plaintiff's privacy interests, the court denied to order disclosure.  *Id.* at *2.

Fair enough.  But this court's view of the discoverability of Eliason's disputed bank records aligns more closely with the cases cited by SRC. *Square Ring, Inc. V. Troyanovsky*, 2018 WL 4201258 (N.D. Fla. 2018) is a contract case between a promoter and a boxer in which the boxer sought a wide swath of the promoter's financial records so that he could determine whether the promoter had a track record of profits and if so, how much, if any lost profits it incurred as a result of the boxer's alleged breach. The court agreed that the promoter's financial records were relevant and with the scope of discovery, *Id.* at *1. *Benefield v. Lockhart*, 2016 WL 9782115 (S.D. Miss. 2016), is a wrongful death case in which plaintiff's expert calculated the economic loss resulting from the decedent's death, including lost future earnings.  After reviewing the expert's methodology, the court found the decedent's bank statements and canceled checks "plainly relevant" to the expert's calculations, particularly her estimate of the decedent's personal consumption rate.  *H.M. Electronics, Inc. V. R.F. Technologies, Inc.*, 2014 WL

3014660 (S.D. Cal.) is a trademark infringement case in which plaintiff objected on myriad grounds to defendant's RFPs 119-122 requesting extensive financial information from plaintiff. The court reviewed plaintiff's first amended complaint and found that, among other things, it had put plaintiff's finances at issue; therefore, "plaintiff's financial documents are relevant." The court also noted that any disclosures were covered by the protective order in that case. *Id.* at \*\* 9-10. *In re Air Crash near Clarence Center*, *NY,* 2011 WL 6370189 (W.D. N.Y. 2011) is another wrongful death case in which the defendant airline companies sought production of five years' worth of a decedent's (and her family's) checking, bank, credit card, debit card, and investment statements, and other records that reflected the personal, family, educational and business spending because this information was relevant to the decedent's gross income, lost earning, and financial support of the claimants. The court ordered full disclosure, finding that, given the nature of plaintiff's claims, all of the requested information was relevant. *Id.* at \*4. *Henry v. IAC/Interactive Group*, 2007 WL 9775385 (W.D. Wash. 2007) is a wrongful termination lawsuit in which plaintiff sought to quash defendant's subpoena to her financial advisor and broker. Defendant argued that it needed to review these documents to assess plaintiff's intentions to voluntarily terminate her employment, to voluntarily retire, her efforts to mitigate her damages, and the amount of money she earned from previous stock options. The court granted in part the motion to quash, but allowed discovery concerning her earned income, stock options, and documentation pertaining to her plans for early retirement were relevant and discoverable. *Id.* at \*2.

SRC cites four other relevant cases in its reply, dkt. 305 at 3, n.1. (SRC also re-cites *HM Electronics v. R.F. Technologies*, addressed above). Conceding that the level of financial detail it seeks in this case is not ordinarily discoverable, SRC contends that where, as here, a party claims damages of the sort that Eliason is seeking, then that party must provide all financial information that is relevant to those claims. *Muslow v. Bd. of Sup. of LSU*, 2021 WL 2853073

3

(E.D. La. 2021) is a Title VII and EPA case by two attorneys formerly employed by defendant in which the court observed that plaintiffs' tax returns were relevant because plaintiffs put into issue their lost wages, income and earnings (although it ordered the returns disclosed based on waiver). *Id.* at *3. *Green v. Seattle Art Museum*, 2008 WL 624961 (W.D. Wash. 2008) is an employment lawsuit in which the court held that plaintiff's tax returns, tax records and W-2s all were discoverable because plaintiff had placed the subjects of his earning capacity and his truthfulness at issue in filing his lawsuit, so "he must procedure all relevant discoverable evidence on those issues if so requested." *Id.* at *7. 2014 WL 3014660 (S.D. Ca. 2014) In *Peters v. N. Trust Co.*, 2001 WL 1002499 (N.D. Ill. 2001), plaintiff put his income, loss of income and his wealth in issue for damages purposes; therefore, evidence on those topics was relevant at trial, although defendant could not label plaintiff as a "millionaire" or "wealthy." *Id.* at *1. *Schaefer v. American Family Mut Ins. Co.*, 192 Wis.2d 768 (1995) is a wrongful death case in which the issue before the state supreme court was whether evidence that the decedent's heirs had received insurance proceeds be excluded at trial on public policy grounds. The court held that the evidence was admissible, framing the question as defining the nature of the loss and how to measure it. *Id.* at 774. In laying out the competing experts' methodologies, the court glossed the "accumulation of surplus" approach used by plaintiffs, and quoted favorably 3 Minzer et al. Damages in Tort Actions § 23,11[1][b] (1994), which listed these factors as relevant to calculating future earning capacity: past earnings, age, health, business capacity, education, habits, experience, energy, morals, social adaptability, skill, present and future business prospects at the time of death, as well as evidence that tended to demonstrate thrift and frugality. *Id.* at 778, n,.1.

Given the broad nature of Eliason's claims for damages, along with the amounts claimed, his characterization of the instant dispute as"preposterous overreach," dkt. 296 at 2 and "abusive discovery madness," *id.* at 12, is self-defeating hyperbole. I also note–but did not need–

Eliason's reminder that "fishing expeditions" still are prohibited. *Id.* That's not what Eliason is facing here.[2] Eliason is claiming millions in damages and David Gibson's far-reaching vocational economic assessment (dkt. 97, sealed) puts into play the full spectrum of Eliason's financial situation, at least for discovery purposes.[3] The fact that Gibson did not rely on the disputed records does not make them irrelevant to SRC's defense against Eliason's claim for damages; they are properly discoverable in this case. The small handful of disputed records already has been gathered and presented to the court for ex parte review, so no burden or proportionality analysis is needed. Having reviewed the bank records, I find that there is nothing in the redacted portions that is unusually sensitive; frankly, given what's being claimed and what's at stake in this lawsuit, Eliason's resistance to providing this information is puzzling.

That said, these are sensitive financial documents and Eliason is entitled to protect their confidentiality up to a point. I am ordering their immediate disclosure to SRC under modified AEO protection: this information may be viewed only by SRC's trial attorneys and its financial damages expert witnesses who may incorporate them into their analyses if they deem this necessary. Any further use or dissemination of Eliason's records must be approved by Judge Conley.

Finally, I am ordering cost-shifting under Rule 37(a)(5)(A). This is not a sanction: in this circuit, cost-shifting is a "loser pays" exercise. *See Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994).

---

[2] In support of his arguments against disclosing his financial information, Eliason points to an unrelated interrogatory delving deeply into his personal life. *See* dkt. 296 t 2, quoting Int. 20. SRC defends this interrogatory based on the nature of the damages Eliason is claiming. *See* dkt. 305 at 2-3. Eliason has not sought protection from responding to Int. 20 and it is not relevant to the instant dispute over Eliason's financial information, so the court will not address it further.

[3] Having paged through Linda K. Schwieger's report ( dkt. 98, sealed), I don't see it as a ground for SRC to seek Eliason's bank records notwithstanding SRC's invocation and critique of her recommendations.

ORDER

It is ORDERED that:

(1) Defendant's motion to bar Eliason from interfering with a subpoena SRC served on Superior Savings Bank, or alternatively to order the bank to comply with the subpoena, dkt. 282, is GRANTED. Not later than October 8, 2022, Superior Bank shall provide the requested records to counsel for defendant.

(2) Only defendant's trial attorneys and its damages experts may review these records absent further order of this court.

(3) To account for the late disclosure of this discovery, the court will, for good cause shown, extend the October 12, 2021 discovery cutoff (dkt. 67 at 3) after hearing from both sides.

(4) Pursuant to Rule 37(a)(5)(A), plaintiff shall pay defendant's reasonable expenses incurred in making its motion, including attorney's fees. Not later than October 12, 2022, defendant may submit an itemized list of expenses to the court. Not later than October 19, 2022 may respond to this request.

Entered this 5th day of October, 2021.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge